TREVINO V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-03-019-CR

ERIC TREVINO APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

A jury convicted Appellant Eric Trevino of aggravated assault with a deadly weapon and sentenced him to four years’ confinement.  Appellant complains that the evidence was factually and legally insufficient to support his conviction.  In three points he asserts that the evidence does not show he intentionally or knowingly caused bodily injury to the victim by stabbing him with a deadly weapon because no knife was found at the scene of the accident. We affirm.

I.  Factual and Procedural Background

At approximately 10:00 p.m. on October 24, 2001, Shakir Abdulla was driving with a passenger, Servon Sadulla, to a friend’s apartment in Fort Worth, Texas, where they planned to watch a movie.  At the same time, Appellant was “cruising” around town with his brother Edward Rodriguez (Edward) in the passenger seat and his cousin Rodney Trevino (Rodney) in the back seat.  The two cars were simultaneously turning left in a dual left-turn lane when their cars narrowly missed colliding into each other.  From this point on, the parties have different versions of the sequence of events that followed.   

Abdulla and Sadulla testified that the people in Appellant’s car swore at them and “flipped [them] off”.  According to Sadulla, Appellant  pulled his car in front of Abdulla’s car, slammed on the brakes, and shouted further obscenities at them.  When Abdulla and Sadulla eventually reached their friend’s apartment complex, Pennsylvania Place Apartments, they turned into the entry of the property.  Prevented from entering the complex by a security gate, Sadulla used his cell phone to ask their friend to let them in the gate.   Before Sadulla could reach their friend, Appellant pulled his car into the Pennsylvania Place apartment complex behind Abdulla’s vehicle and stopped.  Appellant got out of the car and ran toward Abdulla, brandishing a knife, while the other two men from Appellant’s car walked toward Sadulla.  Abdulla and Sadulla got out of their car and a fight ensued.  Appellant came at Abdulla with the knife while Edward and Rodney fought Sadulla.  

Abdulla and Sadulla claimed that during the fight, Appellant stabbed Abdulla twice in the stomach with the knife.  Sadulla used his shirt to slow the bleeding in Abdulla’s stomach and attempted to walk Abdulla inside the gate as Appellant and his friends continued to punch and shout at them.  Soon after they got inside the gate, two police officers from the Tarrant County Hospital District arrived at the scene.  When Appellant saw the police arrive, he ran around the apartment office building into the pool area, where they could no longer see him, and returned moments later without the knife.  Abdulla was taken by ambulance to a hospital where he underwent two operations to repair two stab wounds.  

The story according to Appellant and Edward is quite different.  They agreed that there was almost an accident as the two cars turned left at the same time and that the parties exchanged words and obscene hand gestures.  However, Edward testified that as they were driving in front of Abdulla, Appellant turned on his right blinker to indicate an upcoming turn into the Pennsylvania Place Apartments, where Appellant resided with his wife and two children.  When Appellant turned his right blinker on, Abdulla did the same, so Appellant decided not to turn into the apartment complex in order to avoid a fight.  Appellant changed his mind, however, and proceeded to the next light and turned around.  When they returned to the complex, Abdulla was parked in front of the gate.  Using a keypad at the gate entrance, Appellant opened the entry gate to the complex but was unable to actually enter the complex because Abdulla’s car was blocking the entry.  Appellant got out of the car and yelled at Abdulla to move his car.  When Edward saw Abdulla and Sadulla get out of their car, he too got out of the car because he suspected a fight might start.  According to Edward, Rodney never got out of the car and even locked the car doors because he was scared.   

Appellant began to fight with Abdulla, and Edward began to fight with Sadulla.  Appellant testified that he did not have a knife at any time during the fight, but that he shoved Abdulla down on the ground several times in a grassy area where new trees were planted that had wires sticking out of them to hold them in place.  The fight continued until the police arrived on the scene.  Appellant admitted that he ran behind the apartment office building, but maintained that his hands were bloody from the fight and that he merely went around the corner to wash his hands in the water fountain.  

Jose Duran, a resident of the Pennsylvania Place Apartments, witnessed the altercation as he was sitting in his vehicle listening to music.  Duran’s car was parked just inside the entry gate to the apartments when he first noticed two cars pull up.  According to Duran, three men from one of the cars and two men from the other car got out and began fighting.  Duran testified that he became concerned when he saw Appellant with a knife in his hand trying to stab one of the men in the chest, stomach, and face.  Unable to assist the man due to his confinement in a wheelchair and no cell phone, he watched Appellant stab the man twice.  The man fell back, but got up again to avoid the knife as Appellant tried to stab him in the shoulder.  Just as the fight moved inside the entry gate, the police arrived at the complex and the fight ended.  Duran testified that, after the police arrived, Appellant ran behind the main office of the apartment complex with the knife in his hand.  Approximately sixty seconds later, Appellant returned without the knife, using bad language and pretending that he was the victim.  

Fort Worth police officer Lawrence Thomas was dispatched to the scene and attempted to ascertain what had happened.  He noticed that Appellant’s hand was injured and asked him what happened and if he needed medical assistance.  According to Thomas, Appellant declined medical attention and told the officer that he was attacked with a knife and his hand was cut when he tried to take the knife away from the person.  When asked how Abdulla got injured, Appellant stated that he must have fallen on the knife.  Appellant told Thomas that he did not have a knife and never had a knife during the entire fight.    

After speaking to Duran and hearing his claim that Appellant ran behind the apartment complex office with a knife, Thomas began a search for the knife.  Thomas searched the gutters of the roof on the office building, the area behind the office building, and the adjacent parking lots without finding a knife.  Although Thomas stated that he looked in every possible place that he could think of, he also testified that he did not check an area trash dumpster for the knife.  

II.  Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  When performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and thereby substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  
In determining the legal sufficiency of the evidence, and faced with a record that supports conflicting inferences, we “must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.”  
Matson v. State
, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996).  Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.  
Johnson
, 23 S.W.3d at 11.  In performing this review, we are to give due deference to the fact finder’s determinations.  
Id.
 at 8-9; 
Clewis
, 922 S.W.2d at 136.  Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice.  
Id
. at 9, 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

To make a determination of factual insufficiency, a complete and detailed examination of all the relevant evidence is required.  
Johnson
, 23 S.W.3d at 12.  A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

III.  Discussion

In his first two points, Appellant argues that the evidence was legally insufficient to establish that he intentionally or knowingly caused bodily injury to Abdulla by stabbing him with a deadly weapon.
(footnote: 2)  Appellant argued at trial and in this court that, when he shoved Abdulla on the ground, Abdulla must have fallen on spike supports for newly planted trees in the grassy area where the fight took place.  Under a legal sufficiency review, the question is whether, viewing the evidence in the light most favorable to the verdict, a rational trier of fact could reasonably conclude that Appellant intentionally or knowingly stabbed Abdulla with a deadly weapon.  

Abdulla testified that Appellant got out of the car and came toward him quickly with a knife in his hand.  According to Abdulla, Appellant punched Abdulla and then stabbed him in the left side by his stomach two times.  Abdulla walked backward and then fell down.  After getting up and trying to reach Sadulla, Abdulla did not remember anything until he woke up in the hospital approximately two days later.

Sadulla testified that when Appellant got out of his car he “took out a knife and, you know, flicked it.”  Sadulla stated that he asked Appellant to put the knife down and Appellant told him “I’m going to show you who I am.”  Because Sadulla was fighting with two men from Appellant’s car he did not see Appellant stab Abdulla.  He first noticed that Abdulla was injured when he saw him walking backwards with his hands on his bleeding stomach.  Sadulla took his shirt off and put it on Abdulla’s stomach to slow the bleeding.  According to Sadulla, Appellant continued to come after them, saying “come here, this is not over yet.” 

Duran likewise testified that Appellant brandished a knife during the fight and used it repeatedly in attempts to stab Abdulla.  According to Duran, Appellant continued going after Abdulla even after he stabbed him in the stomach the first time:

Q.  So the person who got stabbed, what did he do?

A.  Well, he fell back once and he got up.  He was trying to – still fighting up, trying to avoid the knife, obviously. 

Q.  Was he trying to avoid the knife or was he trying to hurt the other?

A.  Oh, no, no, he was trying to avoid the knife. 

Q.  Okay.  And what was the person with the knife doing as the person who got stabbed fell back?

A.  Like he was trying to stab him in the shoulder, on his left shoulder, from my standpoint . . . 

Q.  Coming down with the knife?

A.  And to the face and chest.  

Despite Appellant’s theory that Abdulla must have fallen on tree support stakes, Appellant’s sworn testimony regarding the spikes was limited to the following:

Q.  Now, do you remember there being any – back in ‘01 these trees here that are now bigger than they were back then, do you remember these trees being little?

A.  Yes, sir.  Actually, they had no real leaves on them.  They had wires sticking out of them to make them – to hold the tree in place straight.  They had the wires sticking out of them on the – and that’s pretty much all I remember is they did have wires sticking out of them.”

M.L. Lane, the detective assigned to investigate the case, testified that on October 30, six days after the incident, he went out to the apartment complex to view the scene of the offense and took several photographs, including one that depicted some small sapling trees in the area where the altercation occurred.  Lane testified that he did not see any stakes or spikes holding the trees in the ground in those pictures.   

An extensive review of the record 
in the light most favorable to the jury’s verdict reveals that any 
rational trier of fact could reject Appellant’s theory that Abdulla fell on tree spikes and find that Appellant either knowingly or intentionally caused bodily injury to Abdulla by stabbing him with a knife.  
Matson
, 819 S.W.2d at 846.  We consequently hold that the evidence was sufficient for a rational jury to conclude beyond a reasonable doubt that Appellant was guilty of aggravated assault with a deadly weapon and therefore was legally sufficient to support Appellant's conviction.  
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789;  
Burden
, 55 S.W.3d at 612.  We overrule Appellant’s first two points. 

In challenging the factual sufficiency of the evidence, Appellant argues that Abdulla’s injuries were an accident, possibly caused by falling on tree support stakes.  Appellant relies on his own testimony that he had no knife, and on the fact that the police did not find a knife in the vicinity of the altercation, despite an extensive search.  

Abdulla, Sadulla, and Duran, all testified that Appellant got out of his car with a knife and used it to stab Abdulla.  Those same three witnesses also testified that, when the police arrived, Appellant ran around the corner with a knife in his hand and returned a few moments later without the knife.  Although Appellant and Edward testified that there was no knife, the jury, as fact finder was free to believe or disbelieve them.  In light of the undisputed evidence that Abdulla suffered two stab wounds to his stomach and the testimony of Duran, a bystander, that Appellant repeatedly stabbed Abdulla with a knife, we cannot say that Appellant’s testimony that he did not have a knife as well as his theory that Abdulla fell backward onto tree support stakes
 is so weak or so against the overwhelming weight of the evidence as to be manifestly unjust.  Viewing the evidence under the appropriate standard of review, we hold that the evidence is legally and factually sufficient to support the jury's verdict.  Accordingly, we overrule Appellant’s third point.  

V.  Conclusion

Having overruled all of Appellant’s points, we affirm the trial court’s judgment.  

ANNE GARDNER

JUSTICE

PANEL B:  DAUPHINOT and GARDNER, JJ. and SAM J. DAY, J. (Retired, Sitting by Assignment)

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  March 11, 2004

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
A person commits the offense of assault if he intentionally or knowingly causes bodily injury to another.  
Tex. Penal Code Ann.
 § 22.01(a) (Vernon 2003).